## William J. Barton, Plff. in Err., *v.* Jonathan R. Jones et al.

Plaintiff, an employee of the contractors for putting up the iron work in the construction of a building, in the performance of his duties rode on a bundle of the iron beams as they were carried up the outside of the wall by an engine at the top, for the time under the control of his employers,

NOTE.—For responsibility where plaintiff is injured by a fellow servant, see note to Keys v. Pennsylvania Co. 1 Sad. Rep. 316.

For authorities as to duty of master with respect to the employment of

and having been carried over the top of the wall, was injured while being lowered by the engine to the floor of an upper story. Plaintiff thereupon sued his employers for damages, alleging that the engine was at the time, to the knowledge of his employers, operated by a new, inexperienced, and incompetent engineer without notice to or knowledge of plaintiff, and that the injury resulted from the negligence of such engineer. *Held,* on the evidence, that plaintiff was properly nonsuited.

(Decided April 4, 1887.)

July Term, 1886, No. 187, E. D. Error to the Common Pleas No. 4 of Philadelphia County to review a judgment of compulsory nonsuit in an action to recover damages for injuries to the person, alleged to have been caused by negligence. Affirmed.

This action was brought by William J. Barton, against Jonathan R. Jones and Samuel T. Benner, trading as Jones & Benner, to recover damages for injuries received by a fall, alleged to have been caused by the negligence of defendants and their servants.

The following facts appeared before the court at the trial:

Jones & Benner were contractors for putting up the iron structure of the public buildings in Philadelphia. Barton was in their employ as a laborer, whose duty required him to prepare large iron beams, from 20 to 25 feet long, for hoisting, by piling them together and fastening them by a chain, so that a wire and hook, dropped from an overhead engine called a traveler, which ran on a tramway located above the building, at a height of 150 feet from the ground, could be thereto attached. When the pile had been attached to the traveler, he would stand on the edge of the pile while it was being raised, so that he could push it away from the marble face of the building, could signal the engineer as to the direction in, and the place to, which the pile was to be carried, and could, when it reached its destination, detach it from the wire.

Barton had been engaged in this work at the public buildings for several years. The traveler was inclosed so that a man on the ground could not know who was in it. The engineer was

competent servants, see editorial note to Smith v. St. Louis & S. F. R. Co. 48 L. R. A. 368. See also editorial note to Kingston v. Ft. Wayne & E. R. Co. 40 L. R. A. 146, presenting the authorities as to the liability of the employer for employing a drunkard.

guided in his movements by signals (wavings of the hand) given by the man who stood on the iron which was hoisted.

These travelers were constructed differently from an ordinary yard, stationary, or locomotive engine, having much additional and complicated machinery. They required special experience on the part of those who ran them. There were three of them at the building, two being at the height of 150 feet from the ground, one on the west, and the other on the east side of the building. These two were in constant use at the time of Barton's accident, and were run by engineers who had had charge of them for several years, and who were well known to Barton and to the other employees who had worked with them for a considerable time.

There was a third traveler on the north side, which was only occasionally used, and never, so far as the testimony shows, in hoisting anything but stone. It was at a comparatively low elevation, being about 90 feet from the ground. Its regular engineer had died, and for perhaps a month it had been run, at infrequent intervals, by a man named McGraw, whose regular employment was the running of a stationary engine in the yard. McGraw had come to the buildings in the spring of 1882, and had received a few lessons in running this lower traveler. He appears not to have run either of the upper travelers prior to the accident.

The three travelers and the yard engine were all owned by Struthers & Son, who were the contractors for erecting the marble, and who used them for their purposes. The various engineers were employed by them.

The other contractors at the building, including Jones & Benner, were in the habit of hiring from Struthers & Son, as work of hoisting was to be done, one or the other of the three travelers. When thus hired the engineer and traveler were under the control and direction of such contractor, who directed their movements. Struthers & Son assumed no control or direction while the hiring continued.

Richard McCarthy was the general foreman of Jones & Benner, who had control of their work at the buildings and gave all the directions to the employees of Jones & Benner. The latter were rarely at the building. It seems that when the traveler was needed, he (McCarthy) hired it from Struthers & Son.

On November 7, 1882, he hired the west traveler. Dupelle

was absent from his work that day and McGraw, for the first time, had been put in charge of it. Barton swore that he was ignorant of the fact; that he supposed Dupelle was in charge; and that he would not have gone upon the pile had he known otherwise. The foreman of Struthers & Son, one Lawrence, told McCarthy of the change of engineers, and that it would be necessary for his men to be careful. The latter, however, hired the traveler, and gave no warning to Barton, whom he ordered to go upon the pile or bundle of iron beams.

Barton and one Owens, as they had often done before, mounted upon opposite ends of the bundle of iron beams, which weighed about three tons, and ascended in safety to the top of the wall, guiding the load so that it did not strike the timbers of the trestle and the marble work of the building in its ascent. On arriving at the top of the third floor wall, the engine was run in over the wall, preparatory to lowering the iron to the floor of that story. Upon the north or interior wall of the room into which the iron was to be lowered was a common bricklayers' scaffold, composed of pine planks extending about 15 feet in height from the floor of the room. Plaintiff gave a signal to the engineer to lower, which was obeyed. Plaintiff either miscalculated the space necessary to permit the iron to pass, or Owens, who was on the end nearest to the scaffold, neglected to guide it, for 6 inches of the end lodged for a moment upon the scaffold. Owens stepped off. The equilibrium was destroyed, and plaintiff slid from the lower end and fell to the floor below, causing the injuries for which this suit was brought.

Plaintiff at the trial claimed that McGraw was incompetent, that the traveler was managed in a bungling and inexperienced manner, and was lowered too rapidly; and evidence was given to prove such contention. At the close of plaintiff's case a nonsuit was ordered, which the court in banc subsequently refused to take off, and plaintiff took this writ, assigning such action of the court as error.

*James H. Shakespeare* and *John G. Johnson,* for plaintiff in error.—Where an employee is engaged in a hazardous work, and there are matters increasing the hazard, known by the employer, or which ought to be known by him, but not known to the employee, it is his duty to communicate them to the latter; and for a failure to do so, in case injury results, he is responsible. Pat-

terson v. Pittsburg & C. R. Co. 76 Pa. 393, 18 Am. Rep. 412; Rummell v. Dilworth, P. & Co. 111 Pa. 343, 2 Atl. 355, 363; Wood, Mast. & S. §§ 349, 354–356; Strahlendorf v. Rosenthal, 30 Wis. 674; Pantzar v. Tilly Foster Iron Min. Co. 99 N. Y. 368, 2 N. E. 24.

It is the duty of the employer to use due care either personally or through an agent in selecting experienced employees. Crispin v. Babbitt, 81 N. Y. 520, 37 Am. Rep. 521; Wood, Mast. & S. pp. 723, 863, 902; Laning v. New York C. R. Co. 49 N. Y. 532, 10 Am. Rep. 417; Ford v. Fitchburg R. Co. 110 Mass. 260, 14 Am. Rep. 598; Pennsylvania & N. Y. Canal & R. Co. v. Leslie, 16 W. N. C. 322; Mann v. Delaware & H. Canal Co. 91 N. Y. 500; O'Donnell v. Allegheny Valley R. Co. 59 Pa. 248, 98 Am. Dec. 336; Wabash R. Co. v. McDaniels, 107 U. S. 459, 27 L. ed. 607, 2 Sup. Ct. Rep. 932.

The fact of McGraw's inexperience was so clearly shown that it must have been known to Jones and Benner, if they had used due diligence. 57 Pa. 341; Skerritt v. Scallan, Ir. Rep. 11 C. L. 389; MacDonnell, Mast. & S. 316.

McCarthy was not a coservant. Corcoran v. Holbrook, 59 N. Y. 517, 17 Am. Rep. 369.

*John B. Thayer,* for defendants in error.—Plaintiff cannot invoke the principle of *respondeat superior,* because the Messrs. Struthers were McGraw's superiors and not the defendants. Wood, Mast. & S. § 317; Crockett v. Calvert, 8 Ind. 127; Quarman v. Burnett, 6 Mees. & W. 499; Michael v. Stanton, 3 Hun, 462; Patterson v. Pittsburg & C. R. Co. 76 Pa. 393, 18 Am. Rep. 412.

McCarthy was but a fellow servant engaged in a common employment with the plaintiff. Delaware & H. Canal Co. v. Carroll, 89 Pa. 374; New York, L. E. & W. R. Co. v. Bell, 112 Pa. 400, 4 Atl. 50; Lehigh Valley Coal Co. v. Jones, 86 Pa. 433; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Chicago, M. & St. P. R. Co. v. Ross, 112 U. S. 377, 28 L. ed. 787, 5 Sup. Ct. Rep. 184.

The question whether the danger assumed by an employee is one incident to the employment, as well as who are fellow servants, is also for the court and not for the jury. Assop v. Yates, 2 Hurlst. & N. 768; Skipp v. Eastern Counties R. Co. 9 Exch. 223.

The possible negligence of McCarthy to warn the plaintiff was a risk incident to plaintiff's employment arising from their relations as fellow servants. Sykes v. Packer, 99 Pa. 465; Priestley v. Fowler, 3 Mees. & W. 1; McCullough v. Shoneman, 105 Pa. 169, 51 Am. Rep. 194.

PER CURIAM:

This was one of those unfortunate accidents that are liable to occur in the erection of large buildings. The zeal and ability with which the cause was argued by the counsel for the plaintiff has caused us to examine the evidence with great care. We think it is insufficient to send the case to the jury. It follows that there was no error in ordering a compulsory nonsuit and in refusing to take it off.

Judgment affirmed.